**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| JEFFERY RODRIGUEZ &<br>LESLIE RODRIGUEZ, | CIVIL COMPLAINT |
| Plaintiffs, | |
| | CASE NO.  4:17-cv-03903 |
| v. | |
| AD ASTRA RECOVERY SERVICES, INC.,<br>SPEEDY CASH, and CURO FINANCIAL<br>TECHNOLOGIES CORP. f/k/a SPEEDY<br>CASH HOLDINGS CORP., | DEMAND FOR JURY TRIAL |
| Defendants. | |

## COMPLAINT

NOW come JEFFERY RODRIGUEZ ("Jeffery") & LESLIE RODRIGUEZ ("Leslie") (collectively "Plaintiffs"), by and through their attorneys, Sulaiman Law Group, Ltd. ("Sulaiman"), complaining as to the conduct of AD ASTRA RECOVERY SERVICES, INC. ("Ad Astra"),  SPEEDY CASH, and CURO FINANCIAL TECHNOLOGIES CORP. f/k/a SPEEDY CASH HOLDINGS CORP ("CURO") ( collectively "Defendants"), as follows:

### NATURE OF THE ACTION

1.  Plaintiffs bring this action for damages pursuant to the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. §1692 *et seq.*, the Telephone Consumer Protection Act ("TCPA") under 47 U.S.C. §227 *et seq.*, the Texas Debt Collection Act ("TDCA") under Tex. Fin. Code Ann. § 392 *et seq.*, and the Texas Deceptive Trade Practices Act ("DTPA") under Tex. Bus. & Com. Code § 17 *et seq.* for Defendants' unlawful conduct.

## JURISDICTION AND VENUE

2.   This action arises under and is brought pursuant to the FDCPA and TCPA.  Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1692, 47 U.S.C §227, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.  Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

3.   Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendants conduct business in the Southern District of Texas and a substantial portion of the events or omissions giving rise to the claims occurred within the Southern District of Texas.

## PARTIES

4.   Plaintiff Jeffery Rodriguez is a natural person residing in Houston, which falls within the Southern District of Texas. Jeffery Rodriguez is married to Leslie Rodriguez.

5.   Plaintiff Leslie Rodriguez is a natural person residing in Houston, which falls within the Southern District of Texas.

6.   Jeffery is a "person" as defined by 47 U.S.C. §153(39).

7.   Leslie is a "person" as defined by 47 U.S.C. §153(39).

8.   Ad Astra is a Nevada corporation with its principal place of business located at 7330 West 33rd Street N., Suite 118, Wichita, Kansas 67205. Defendant is a foreign company whose primary business is the collection of debts owed to others across the country, including the state of Texas. Defendant's registered agent in Texas is National Registered Agents, Inc. located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

9.   Speedy Cash is a Nevada corporation with its principal place of business located at 3527 North Ridge Road, Wichita, Kansas 67205. Speedy Cash is a foreign company whose primary business is offering payday loan services and is engaged in the business of collecting or attempting

to collect debts owed or due using the mail and telephone from consumers across the country, including consumers in the State of Texas. Defendant's registered agent is National Registered Agents, Inc. of NV located at 701 South Carson Street, Suite 200, Carson City, Nevada 89701.

10.  CURO is a corporation with its principal place of business located at 3527 North Ridge Road, Wichita, Kansas 67205. Defendant is the parent company of Speedy Cash.[1]

11. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

12.  On September 30, 2015 and October 16, 2015, Jeffery received collection letters from Speedy Cash demanding payment in the amounts of $206.53 and $1,195.40, respectively. *See* Exhibit A, true and correct copies of the September 30, 2015 and October 26, 2015 collection letters.

13.  Jeffery was puzzled by Speedy Cash's attempts to collect this debt as he did not owe this debt nor did he ever have any business relationship with Speedy Cash.

14.  Jeffery was a victim of identity theft and upon information and belief, the person who stole Jeffery's identity incurred the subject debt that Speedy Cash had been attempting to collect.

15.  Since 2015, Jeffery began receiving calls to his cellular phone, (832) XXX-4623, from Ad Astra attempting to collect a debt ("subject debt").

16.  Unable to collect the subject debt from Jeffery, Speedy Cash transferred the rights to collect the subject debt to Ad Astra even though Jeffery never incurred the subject debt.

---

[1] https://curo.com/brands (last accessed December 12, 2017).

3

17. At all times relevant to the instant action, Jeffery was the sole subscriber, owner, and operator of the cellular phone ending in 4623.

18. Ad Astra has used the number (866) 398-2089 when placing calls to Jeffery's cellular phone, but upon belief, Ad Astra has used other numbers as well.

19. Upon information and belief, the aforementioned phone number ending in 2089 is regularly utilized by Ad Astra during its debt collection activity.

20. Upon answering calls from Ad Astra, Jeffery has experienced a noticeable pause, lasting approximately three to five seconds in length, before a live representative begins to speak.

21. Jeffery has never had any business relationship with Ad Astra, nor has Jeffery ever given Ad Astra permission to call his cellular Phone, thus causing Jeffery much confusion as to why Ad Astra was contacting him.

22. Upon speaking with Ad Astra, Jeffery was informed that Ad Astra is acting as a debt collector attempting to collect upon a debt incurred through Speedy Cash.

23. Jeffery has repeatedly advised Ad Astra that he did not incur the subject debt and that he doesn't owe any sum of money to Ad Astra. Furthermore, Jeffery has repeatedly demanded that Ad Astra cease placing calls to his cellular phone.

24. On April 1, 2016, Ad Astra sent Jeffery a dunning letter demanding payment in the amount of $1,195.40. *See* Exhibit B, a true and correct copy of the April 1, 2016 dunning letter.

25. The dunning letter advised Jeffery that the subject debt was originally incurred through an "Installment Bankline Loan" obtained from Speedy Cash. *Id.*

26. As previously pled, Jeffery has never obtained any loans from Speedy Cash nor has he ever done any business with Speedy Cash.

27.  Ad Astra's dunning letter also informed Jeffery that the debt it was attempting to collect has been reported as an unpaid collection to the credit bureaus. *Id.*

28.  The fact that the dunning letter referenced negative reporting to the credit bureaus correlated with the issues Plaintiffs encountered during the underwriting process when they were purchasing their home and lines of credit Plaintiffs did not qualify for due to the negative reporting.

29.  Ad Astra has also repeatedly called another cell phone owned by Jeffery, (281) XXX-1906, looking to collect the subject debt which he did not incur.

30.  At all times relevant to the instant action, Jeffery was the sole subscriber, owner, and operator of the cellular phone ending in 1906.

31.  The cellular phone ending in 1906 is regularly used by Jeffery while he is at work and Ad Astra's constant calls to his cellular phone have been the subject of many embarrassing comments made towards Jeffery and his financial situation made by his own employees.

32.  During at least one call answered by one of Jeffery's employees, Ad Astra communicated to Jeffery's employee that Jeffery owes the subject debt, thus painting a false image of Jeffery and his financial situation.

33.  Jeffery is constantly embarrassed whenever Ad Astra calls his cellular phone at work and dreads the moment his cellular phone rings as he anticipates the ridicule and disparaging comments from his employees regarding his perceived inability to pay his bills with each phone call Ad Astra places to his cellular phone.

34.  In or around May 2016, Leslie began receiving calls to her cellular phone, (832) XXX-4624, from Ad Astra attempting to collect the subject debt.

35. At all times relevant to the instant action, Leslie was the sole subscriber, owner, and operator of the cellular phone ending in 4624.

36. Ad Astra's calls to Leslie's cellular phone have also led to very uncomfortable conversations between the married Plaintiffs and Ad Astra's actions have forced Jeffery to explain how he doesn't owe the debt to Leslie.

37. Upon speaking with Ad Astra's fraud department, Jeffery was informed that the amount borrowed from Speedy Cash was wired to a Bank of America account.

38. Jeffery has further confirmed that he never opened an account with Bank of America and he further relayed this information to Ad Astra.

39. Notwithstanding the fact that Jeffery never incurred the subject debt, never owed the subject debt, and repeatedly demanded that the calls cease, Ad Astra placed no less than 500 calls to Plaintiffs' cellular phones from 2015 through March 2017.

40. During one conversation, Ad Astra's representative even admitted to Jeffery that it had been calling him for over 500 days.

41. On May 15, 2017, Jeffery filed a police report with the Fort Bend County Sheriff's office stating that an unknown person used his personal information without his knowledge or consent.

42. On June 9, 2017, Jeffery received a letter from Speedy Cash's Fraud Response Group Business Solutions department which stated: "We have received all required documentation from you to complete the loan dispute process and you have been relieved of any liability regarding this loan." *See* Exhibit C, a true and correct copy of the June 9, 2017 letter.

43. Despite having knowledge that Jeffery never incurred the subject debt and Speedy Cash's own investigation absolving Jeffery of any connection with the subject debt, Ad Astra brazenly sent Jeffery another dunning letter demanding payment of the subject debt, including an offer to settle the subject debt in or around November 2017.

44.  Feeling helpless and harassed by Defendants' conduct, Plaintiffs spoke with Sulaiman regarding their rights, resulting in expenses.

45.  Plaintiffs have been unfairly and unnecessarily harassed by Defendants' actions.

46.  Plaintiffs have suffered concrete harm as a result of Defendants' actions, including but not limited to, invasion of privacy, embarrassment, aggravation that accompanies collection telephone calls intended for an unknown individual, emotional distress, increased risk of personal injury resulting from the distraction caused by the constant calls, increased usage of their telephone services, loss of cellular phone capacity, diminished cellular phone functionality, decreased battery life on their cellular phones, and diminished space for data storage on their cellular phones.

47.  Furthermore, Jeffery has had to face severe humiliation as a result of Defendants' irresponsible actions and inactions as previously alleged.

## COUNT I – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT (AGAINST AD ASTRA)

48.  Plaintiffs repeat and reallege paragraphs 1 through 47 as though full set forth herein.

49.  Jeffery is a "consumer" as defined by 15 U.S.C. §1692a(3) of the FDCPA.

50.  Leslie is a "consumer" as defined by 15 U.S.C. §1692a(3) of the FDCPA.

51.  Ad Astra is a "debt collector" as defined by §1692a(6) of the FDCPA, because it regularly use the mail and/or the telephone to collect, or attempt to collect, delinquent consumer accounts.

52.  Ad Astra is engaged in the business of collecting or attempting to collect, directly or indirectly, defaulted debts owed or due or asserted to be owed or due to others.

53.  The subject debt is a "debt" as defined by FDCPA §1692a(5) as it allegedly arises out of a transaction due or asserted to be due to another for personal, family, or household purposes

### a.  Violations of FDCPA §1692b & c(b)

54. The FDCPA, pursuant to 15 U.S.C. §1692b, prohibits a debt collector from "communicating with any person other than the consumer for the purpose of acquiring location information about the consumer." Additionally, under §1692b(3), a debt collector "shall not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information." Furthermore, under §1692c(b), "without the prior consent of the consumer given directly to the debt collector…a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency…the attorney of the creditor, or the attorney of the debt collector."

55.  Ad Astra violated §1692b, b(3), and c(b) by contacting Plaintiffs on numerous occasions seeking to collect upon a debt that neither Plaintiff incurred. Jeffery explicitly notified Ad Astra that he was not the individual it was looking to collect the debt from and demanded that it stop calling him. Notwithstanding the fact that Plaintiffs did not incur the debt which Ad Astra was seeking to collect, Ad Astra still continued to call Plaintiffs' cellular phones numerous times without their consent. Moreover, Ad Astra knew it was calling Leslie in connection with the subject debt even though Ad Astra wrongfully alleged that Jeffery owed the subject debt.

### b.  Violations of FDCPA §1692c(a)(1) and §1692d

56. The FDCPA, pursuant to 15 U.S.C. §1692c(a)(1), prohibits a debt collector from communicating "with a consumer in connection with the collection of any debt at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer" without the prior consent of the consumer given directly to the debt collector or the express

8

permission of a court of competent jurisdiction. Additionally, pursuant to 15 U.S.C. §1692d, the FDCPA prohibits a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." §1692d(5) further prohibits, "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."

57. Ad Astra violated §1692c(a)(1), d, and d(5) when it continuously called Plaintiffs after being asked to stop calling and that it was contacting individuals who did not incur the subject debt. This repeated behavior of systematically calling Plaintiffs' cellular phones in spite of their demands was harassing and abusive. The frequency and volume of calls illustrates how Ad Astra willfully ignored Plaintiffs' requests with the goal of annoying and harassing them.

58. Ad Astra was notified by Plaintiffs that its calls were not welcome. As such, Ad Astra knew that its conduct was inconvenient and harassing to Plaintiffs.

### c.  Violations of FDCPA § 1692e

59. The FDCPA, pursuant to 15 U.S.C. §1692e, prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

60. In addition, this section enumerates specific violations, such as:

> "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  15 U.S.C. §1692e(10).

61. Ad Astra violated §1692e, e(8), and e(10) when it used deceptive means to collect and/or attempt to collect the subject debt. Ad Astra threatened to report false information regarding the subject debt on Jeffery's credit reports. Furthermore, Ad Astra repeatedly contacted the wrong party seeking to collect upon a debt, and was even notified by Plaintiffs that it was calling the wrong person and was asked to stop calling. Nevertheless, Ad Astra called Plaintiffs numerous

times in a deceptive attempt to force them to answer its calls and ultimately make a payment, even though the debt was not theirs. Through its conduct, Ad Astra misrepresented its ability to legally contact Plaintiffs via an automated system when Ad Astra never had such consent and even after Ad Astra was told to stop calling Plaintiffs' cellular phones.

### d.  Violations of FDCPA § 1692f

62. The FDCPA, pursuant to 15 U.S.C. §1692f, prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

63. Ad Astra violated §1692f when it unfairly and unconscionably attempted to collect on a debt by repeatedly calling Plaintiffs numerous times. Attempting to coerce Plaintiffs into payment by placing voluminous phone calls after becoming privy to the fact that it is contacting the wrong parties, and after being told to stop calling, is unfair and unconscionable behavior. These means employed by Ad Astra only served to harass and confuse Plaintiffs.

64. As pled above, Plaintiffs have been harmed and suffered damages as a result of Ad Astra's illegal actions.

WHEREFORE, Plaintiffs, JEFFERY RODRIGUEZ & LESLIE RODRIGUEZ, respectfully request that this Honorable Court enter judgment in their favor as follows:

a.  Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b.  Awarding Plaintiffs statutory damages of $1,000.00 as provided under 15 U.S.C. §1692k(a)(2)(A);

c.  Awarding Plaintiffs actual damages, in an amount to be determined at trial, as provided under 15 U.S.C. §1692k(a)(1);

d.  Awarding Plaintiffs costs and reasonable attorney fees as provided under 15 U.S.C. §1692k(a)(3); and

e.  Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT II – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### (AGAINST AD ASTRA)

65.   Plaintiffs repeat and reallege paragraphs 1 through 47 as though fully set forth herein.

66.   The TCPA, pursuant to 47 U.S.C. § 227(b)(1)(iii), prohibits calling persons on their cellular phone using an automatic telephone dialing system ("ATDS") without their consent.  The TCPA, under 47 U.S.C. § 227(a)(1), defines an ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers."

67.   Ad Astra used an ATDS in connection with its communications directed towards Plaintiffs' cellular phones. The noticeable pause, lasting approximately three to five seconds in length, which Plaintiffs experience during answered calls from Ad Astra is indicative that an ATDS is being utilized to generate the phone calls.  Additionally, the nature and frequency of Ad Astra's contacts points to the involvement of an ATDS. Moreover, an Ad Astra agent went so far as brazenly informing Jeffery that Ad Astra had been calling Jeffery for over 500 days.

68.   Ad Astra violated the TCPA by placing numerous of phone calls to Plaintiffs' cellular phones using an ATDS without their consent. Plaintiffs have never had any business relationship with Ad Astra nor have they ever given Ad Astra permission to call their cellular phones. Ad Astra was calling Plaintiffs' cellular phones seeking to collect a debt that Plaintiffs never incurred. As such, Plaintiffs could not have given Ad Astra consent to contact them. Even if Ad Astra did have a legitimate business reason for initially contacting Plaintiffs, which it did not, Plaintiffs explicitly revoked any consent Ad Astra may have had to contact Plaintiffs on their cellular phones.

69. The calls placed by Ad Astra to Plaintiffs' cellular phones were regarding collection activity and not for emergency purposes as defined by the TCPA under 47 U.S.C. §227(b)(1)(A)(i).

70.   Under the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B), Ad Astra is liable to Plaintiffs for at least $500.00 per call. Moreover, Ad Astra's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiffs are otherwise entitled to under 47 U.S.C. § 227(b)(3)(C). Ad Astra's willful conduct is exemplified by its persistent calling of Plaintiffs' cellular phones despite knowing that the phone numbers it called do not belong to the individual who incurred the subject debt.

WHEREFORE, Plaintiffs, JEFFERY RODRIGUEZ & LESLIE RODRIGUEZ, respectfully request that this Honorable Court enter judgment in their favor as follows:

    a.   Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

    b.   Awarding Plaintiffs damages of at least $500.00 per phone call and treble damages pursuant to 47 U.S.C. §§ 227(b)(3)(B)&(C);

    c.   Awarding Plaintiffs costs and reasonable attorney fees; and

    d.   Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT III – VIOLATIONS OF THE TEXAS DEBT COLLECTION ACT
### (AGAINST AD ASTRA)

71. Plaintiffs restate and reallege paragraphs 1 through 47 as though fully set forth herein.

72. Jeffery is a "consumer" as defined by Tex. Fin. Code Ann. § 392.001(1).

73. Leslie is a "consumer" as defined by Tex. Fin. Code Ann. § 392.001(1).

74. Ad Astra is a "debt collector" and a "third party debt collector" as defined by Tex. Fin. Code Ann. § 392.001(6) and (7).

75. The subject debt is a "consumer debt" as defined by Tex. Fin. Code Ann. § 392.001(2) as it is an obligation, or alleged obligation, arising from a transaction for personal, family, or household purposes.

### a.  Violations of TDCA § 392.302

76. The TDCA, pursuant to Tex. Fin. Code Ann. § 392.302(4), states that "a debt collector may not oppress, harass, or abuse a person by causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number."

77. Ad Astra violated the TDCA when it continued to call Plaintiffs' cellular phones numerous times after they notified Ad Astra that they did not incur the subject debt, after Plaintiffs demanded that Ad Astra stop calling, and after having notice that Plaintiffs were not the purported debtors. This repeated behavior of systematically calling Plaintiffs' cellular phones in spite of their demands was harassing and abusive. Furthermore, the nature and volume of phone calls would naturally cause an individual to feel oppressed.

WHEREFORE, Plaintiffs, JEFFERY RODRIGUEZ & LESLIE RODRIGUEZ, respectfully request that this Honorable Court enter judgment in their favor as follows:

a.  Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.  Entitling Plaintiffs to injunctive relief pursuant to Tex. Fin. Code Ann. § 392.403(a)(1).

c.  Awarding Plaintiffs actual damages, pursuant to Tex. Fin. Code Ann. § 392.403(a)(2).

d.  Awarding Plaintiffs  punitive damages, in an amount to be determined at trial, for the underlying violations;

e.  Awarding Plaintiffs costs and reasonable attorney fees, pursuant to Tex. Fin. Code Ann. § 392.403(b);

f.  Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT IV – VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT (AGAINST DEFENDANTS)

78.  Plaintiffs restate and reallege paragraphs 1 through 47 as though fully set forth herein.

79.  The DTPA states:

> "False, misleading, or deceptive acts or practices in the conduct of
> any trade or commerce are hereby declared unlawful and are subject
> to action by the consumer protection division under Sections 17.47,
> 17.58, 17.60, and 17.61 of this code."   Tex. Bus. & Com. Code §
> 17.46.

80. Jeffery is a "person" as defined by Tex. Bus. & Com. Code § 17.45(3).

81. Leslie is a "person" as defined by Tex. Bus. & Com. Code § 17.45(3).

82. Jeffery is a "consumer" as defined by Tex. Bus. & Com. Code § 17.45(4).

83. Leslie is a "consumer" as defined by Tex. Bus. & Com. Code § 17.45(4).

84. Ad Astra is a "person" as defined by Tex. Bus. & Com. Code § 17.45(3).

85. Speedy Cash is a "person" as defined by Tex. Bus. & Com. Code § 17.45(3).

86. CURO is a "person" as defined by Tex. Bus. & Com. Code § 17.45(3).

87. Ad Astra's collection calls to Plaintiffs' cellular phones are "trade" and "commerce" as defined by Tex. Bus. & Com. Code § 17.45(6).

88. Defendants violated the DTPA by engaging in an unlawful deceptive act or practice in contacting Plaintiffs or causing Plaintiffs to be contacted on their cellular phones. At the direction and with the assistance of Speedy Cash and CURO, Ad Astra relentlessly called Plaintiffs on their cellular phones through means of an ATDS when Ad Astra did not have consent to do so, after Plaintiffs demanded that the calls cease, and after becoming aware that Plaintiffs did not incur the underlying subject debt.  Ad Astra ignored Plaintiffs' requests and information they provided by continuing to systematically place calls to their cellular phones without their consent.  By doing so, Ad Astra, at the direction of Speedy Cash and CURO, falsely and deceptively represented that it had the legal ability to contact Plaintiffs seeking collection of a debt when it was not legally entitled to take such action. Defendants were never given consent to contact Plaintiffs on their

cellular phones and Ad Astra continued to call Plaintiffs on their cellular phones even after being asked to stop. Ad Astra had an obligation under the TCPA to cease its contacts to Plaintiffs' cellular phones, but ignored this obligation in order to maximize its profits and continued to harass Plaintiffs. Following their characteristic behavior in placing, or causing to be placed, voluminous calls to consumers, Defendants engaged in a deceptive act, willfully done knowing that consumers are unlikely to be aware of their rights and susceptible to sustained pressure.

89. The DTPA was designed to protect consumers, such as Plaintiffs, from the exact behavior committed by Defendants.

90. The DTPA further states:

> "A consumer may maintain a cause of action where [ ] the following constitute[s] a producing cause of economic damages or damages for mental anguish: any unconscionable action or course of action by any person." Tex. Bus. & Com. Code §§ 17.45(5) and 17.50(a)(3).

91. As pled above, Plaintiffs have suffered actual damages as a result of Defendants' unconscionable practices. As such, Plaintiffs are entitled to relief pursuant to Tex. Bus. & Com. Code. § 17.50(b)(1)(3). An award of three times actual damages and punitive damages is appropriate because Defendants' conduct was committed knowingly and intentionally. After Ad Astra was notified by Plaintiffs that they were not the parties who incurred the debt that Ad Astra was seeking to collect and that they did not wish to receive any more phone calls, Ad Astra clearly knew that it should no longer contact Plaintiffs. Even still, Ad Astra continued to act at the direction of Speedy Cash and CURO in defiance of Plaintiffs' prompts and the law by continuing to bombard them with collection calls stemming from a debt Plaintiffs did not owe and a debt Plaintiffs never incurred. In an unfair and unconscionable manner, Defendants caused Plaintiffs to

be called numerous times in an attempt to harass, annoy, and coerce Plaintiffs into making a payment towards a debt they never incurred.

92. As stated above, Ad Astra is also in violation of the TDCA. "A violation of the TDCA is a per se deceptive trade practice under the DTPA, and is actionable under the DTPA." Tex. Fin. Code. Ann. § 392.404(a).

93. Thus, Ad Astra's harassment campaign does not only violate the TDCA, but also constitutes a per se deceptive trade practice pursuant to the DTPA. Upon information and belief, Defendants regularly engage in the above described behavior against consumers in Texas and, for public policy reasons, should be penalized.

WHEREFORE, Plaintiffs, JEFFERY RODRIGUEZ & LESLIE RODRIGUEZ, respectfully request that this Honorable Court enter judgment in their favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiffs actual damages, pursuant to Tex. Bus. & Com. Code. §17.50(b)(1)(3);

c. Awarding Plaintiffs three times actual damages, pursuant to Tex. Bus. & Com. Code §17.50(b)(1);

d. Awarding Plaintiffs  punitive damages, in an amount to be determined at trial, for the underlying violations;

e. Awarding Plaintiffs costs and reasonable attorney fees, pursuant to Tex. Bus. & Com. Code § 17.50(d);

f. Awarding any other relief as this Honorable Court deems just and appropriate.

**Plaintiffs demand trial by jury.**

Dated: December 27, 2017

s/ Marwan R. Daher
Marwan R. Daher, Esq.
Counsel for Plaintiffs
Admitted in the Southern District of Texas
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
(630) 575-8181 x109 (phone)
(630) 575-8188 (fax)
mdaher@sulaimanlaw.com

Respectfully submitted,

s/Omar T. Sulaiman
Omar T. Sulaiman, Esq.
Counsel for Plaintiffs
Admitted in the Southern District of Texas
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
(630) 575-8181 x108 (phone)
(630) 575-8188 (fax)
osulaiman@sulaimanlaw.com